THE TRENTON TRUST AND SAFE DEPOSIT COMPANY, administrator, &c.,

*v.*

MARY FRANCES ARMSTRONG et al.

[Decided December 12th, 1905.]

A will provided that upon the decease or marriage of testator's widow the estate should go to testator's three unmarried daughters, so long as they should remain unmarried, and in case they "all" should marry it should be equally divided between testator's five children or the issue of deceased children.—*Held*, (1) that the daughters took the use of the fund during the time they remained unmarried as joint tenants, with right of survivorship between them, and so long as any of the daughters remained alive and unmarried the trust continued for their benefit, although others had died unmarried, so as to make it impossible that "all" should ever marry; (2) that the remainder over to the children in the *corpus* of the estate became vested on the death of the testator and will take effect in possession upon the determination of the life estate of the three daughters by the death or marriage of all of them.

On bill for construction of will and direction to trustees.

*Mr. James Buchanan,* for the complainant.

BERGEN, V. C.

The complainant, as trustee, and also as ancillary administrator with the will annexed, of Ephraim W. Blackwell, deceased, having in hand a trust fund, part of the estate of said

decedent, has filed this bill for directions as to the manner in which it shall execute the trusts created by the will of its testator.

The complainant has in hand about $2,000, which it holds subject to the trust, if any, arising from the proper construction of the following paragraphs appearing in the will of the deceased, viz.:

> "*Item.* I give, devise and bequeath the net rents, interest and income of all my estate real, personal and mixed whatsoever and wheresoever of which I may die seised, possessed or entitled, unto my beloved wife Sarah Ann Blackwell, for and during the term of her natural life, provided she so long shall remain my widow, single and unmarried, but not otherwise, she paying all charges and taxes against said real estate.
>
> "And emmediately upon the decease of intermariage of my said wife which shall first happen, I give, devise and bequeath unto my three unmarried daughters, Sarah Elizabeth Thompson, Emily Blackwell and Florence Blackwell, so long as they remain unmarried, to have all my property so long as they remain unmarried, in case they all marrying, to be equally divided between my five children, Mary Frances Armstrong, Sarah Elizabeth Thompson, Emily Blackwell, Theodore J. Blackwell, and Florence Blackwell, or the lawful issue of the same as shall then be decased or their their respective heirs, administrators, and executors or assigns forever so nevertheless that such issue take and receive such part and share only as his, her or their deceased parent would have taken if then living."

The widow, and Sarah, one of the three unmarried daughters, are dead. Emily and Florence, two of the three daughters described in the will as unmarried, are still living. Sarah died after the testator without leaving issue, never having been married. Beside these three daughters the testator left a daughter, Mary Frances Armstrong, the wife of James C. Armstrong—she is still living—and a son, Theodore, who survived the testator, and died leaving three children. These persons are all of the parties interested in the present or future distribution of this fund. They have all been made parties defendant to this suit, and for want of answers, a decree *pro confesso* has been taken against them.

The doubt as to its duty in the premises which the complainant suggests arises under the claim made by the two unmarried daughters that they are entitled to the whole of the

income as survivors of their sister Sarah, and that such right will continue to the unmarried sister should either of the present survivors marry or die, and that no distribution of the *corpus* of the fund can be made while either of the three live unmarried. Against this claim is the insistment on behalf of the children of Theodore that the three unmarried daughters took only an interest which was to be divested upon the death or marriage of either, and that upon the death of Sarah they became entitled to an immediate distribution of the whole fund between them, representing their father, and their aunts, Florence, Emily and Mary. The intentions of the testator are so inartistically expressed in his will as to make it difficult to clearly ascertain and define them according to well-settled rules of construction, but it seems to me that the dominating purpose of the testator was to provide for the comfortable support and maintenance of such of the women of his family as were unmarried and dependent upon their own exertions for support. His estate was small, and he devotes its income at first to the support of his wife during her widowhood. After this purpose is served the income is to be devoted toward the maintenance of such of his daughters as remained unmarried, and when all were married, the preference was to cease and the fund divided equally among all the children, because in the mind of the testator they had then reached a common level, and my understanding of this bequest is that it was the testator's intention that the fund was to remain undistributed and the income applied to the use of any of the daughters unmarried until all were married, or the happening of some event which precluded the possibility of the fulfillment of the condition. The time fixed for the distribution is when all are married. The death of one unmarried makes it impossible to have this condition met if the word "all" is to be applied collectively to the donees as a class, and my interpretation of this clause is that the word "all" applies only to so many of the class as remain capable of marrying; that the death of one does not destroy the trust because all of the class cannot marry, but it continues for the benefit of the remaining beneficiaries so long as any of them are alive and

unmarried. The class may be diminished by death or marriage, but it is not extinguished so long as one of them lives and continues within the description of those for whose benefit the trust was created. The devise is to three unmarried daughters so long as they remain unmarried, with remainder over in the event of "all marrying." It is a legacy given to two or more persons by name without words indicating an intention to confer distinct interests, and the three daughters take the use of the fund during the time they remain unmarried as joint tenants with right of survivorship. *Noe's Administrator* v. *Miller's Executors, 31 N. J. Eq. (4 Stew.) 234, 236; Gordon* v. *Jackson, 58 N. J. Eq. (13 Dick.) 166.* It therefore follows that the complainant, as trustee, should hold the trust fund so long as any one of the three daughters remains unmarried, and pay the income to all retaining the qualification established by the testator.

A provision made for the support of daughters as long as they continue unmarried and need support, where the evident intention is not to restrain marriage, but to provide support, is a valid bequest. *Graydon's Executors* v. *Graydon, 23 N. J. Eq. (3 C. E. Gr.) 229, 237.*

On the argument the attention of the court was called to the fact that Sarah Elizabeth Thompson, one of the three daughters, being a widow, did not properly fall within the description "unmarried," but this condition does not change the situation. She was a widow at the time of the making of the will, and as the testator expressly names her as unmarried, we must adopt the evident intention of the testator and give to this word a secondary and perhaps a less-accustomed meaning, which is, "not being married at the time in question," that time here being the making of the last will.

The next question presented is, Has the testator made any disposition of the *corpus* of his estate? The gift over, as expressed by the testator, is to take effect when all of the three unmarried daughters are married, and it is insisted that the gift of the *corpus* is liable to take effect or to be defeated by the occurrence or non-occurrence of an uncertain event, viz., the marriage, not of one, but of all of these unmarried daughters,

and therefore falls within the definition of a conditional legacy, and as one of the daughters died unmarried, the condition upon which distribution depends can never happen, and that therefore the testator died intestate as to the *corpus.* In my judgment, this insistment has not the sanction of the true rules of construction to be applied to a case of this character, and I am of opinion that the testator intended to create, and under well-established rules for the construction of wills did create, an estate for life, which was subject to an earlier termination upon the marriage of all of his then unmarried daughters, and that the remainder over takes effect on the determination of the preceding estate, whether by death or marriage, and that although the bequest over is, in terms, made payable upon the marriage of the life tenant, it is to be extended by implication so as to take effect on the determination of that estate, whether by death or marriage.

What the testator undoubtedly intended was a provision for his unmarried daughters during their maidenhood, even if that condition continued until their death, and in the event of the destruction of that previous estate, either by marriage or death, then the *corpus* of the fund was to be divided among his living children, which might include these three daughters if the determination of their life estate had been caused by marriage, and also among the issue, *per stirpes,* of any of his children who might have died before the determination of the previous estate. This construction has the authority of well-adjudged cases. In *Eaton* v. *Hewitt, 2 Drew. & S. 184, 192,* the court said: "It is a rule now well established that where a testator gives to a woman a life interest if she so long remains unmarried, and then directs that in the event of her marrying the property shall go over to another, although according to the strict language the gift over is expressed only to take effect in the event of the marriage of the life tenant, the gift over is held to take effect even though the tenant for life does not marry."

In *Browne* v. *Hammond, Johns. Ch. (Eng.) 210,* where the gift was to the wife so long as she should remain the testator's widow, without being expressly for her life, the court held that

it was concluded by the authorities "which have determined that a devise or bequest over, though in terms made upon the marriage of the donee of the preceding estate, is to be extended by implication so as to take effect on the determination of that estate by death." This case was cited with approval in *Underhill* v. *Roden, 2 Ch. Div. 494.*

The result I have reached is that the gift over of the *corpus* of this fund creates a vested interest, which took effect on the death of the testator, subject to the estate of the widow, which has now been disposed of by her death, and also subject to the joint estate of the three unmarried daughters during their maidenhood, or life if they never marry.